UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-24508-CIV-TORRES

WILLIAM VIGNOLI, LAURA PATO
CASTILLO, and JUAN SEBASTIAN
VIGNOLI,

    Plaintiffs,

vs.

CLIFTON APARTMENTS, INC.,
SERRANO IMPORT CORPORATION,
and ELAINE FICKES,

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants CLIFTON APARTMENTS, INC., SERRANO IMPORT CORPORATION, and ELAINE FICKES ("Defendants")'s Motion for Final Summary Judgment ("Motion") against Plaintiff LAURA PATO CASTILLO ("Castillo"). [D.E. 120]. Castillo timely filed her Response [D.E. 122], to which Defendants timely filed their Reply [D.E. 125]. Defendants' Motion is therefore ripe for adjudication. Having reviewed the Motion, Response, Reply, relevant authority, and record evidence submitted in support of or in opposition to the same, the Court hereby **DENIES** Defendants' Motion as follows.

## I. BACKGROUND

Castillo's case arises out of her employment as an assistant resident manager for Defendants, who operate apartment complexes in Miami-Dade County, Florida. Castillo alleges that Defendants (1) failed to pay her minimum wages for her work performed and (2) retaliated by firing her, ordering her to vacate the living quarters Defendants had provided, and pressing charges against her coplaintiff, William Vignoli ("Vignoli"), for allegedly stealing rent money from Clifton Apartments, Inc. ("Clifton"). Castillo, Vignoli, and Juan Sebastian Vignoli ("Juan Sebastian") collectively seek to recover money damages for Defendants' actions pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). [D.E. 69].[1] Defendants largely deny Plaintiffs' allegations and assert eight affirmative defenses. [D.E. 70].

Plaintiff began working full-time for Clifton from some time in 2003 through March 26, 2012, performing administrative work for a residential complex of approximately 33 units. As the assistant resident manager, Castillo was tasked with clerical work, collecting rents and security deposits from tenants, and coordinating property maintenance and repairs. During the majority of her employment with Defendants, Castillo also worked full-time in the meat department at New Way Foods ("New Way") grocery store. Castillo's employment with New Way is largely the subject of Defendants' Motion.

Castillo did not have a written employment agreement with Defendants. The

---

[1] The parties reached an agreement as to Plaintiffs' claims of state-law violations. [*See* D.E. 79].

parties agree that she was provided with on-site housing as a condition of her employment and for the convenience of Defendants.[2] During the relevant time period, Castillo claims to have worked 30 hours per week for Clifton, and that despite being promised a salary consisting of minimum wages and complaining about not receiving the same, she never received any payment for her work. Defendants allege that they never employed Castillo, and that even if she can establish she was so employed, any damages claim should be offset by the cost of housing provided.

Defendants' motion for final summary judgment seeks a pretrial dispositive ruling that Castillo's claims are barred by judicial estoppel. [D.E. 120].

## II.   ANALYSIS

### A.   *Standard of Review*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). "On summary judgment the inferences to be drawn from the

---

[2] Defendants do not concede that Plaintiffs were their "employees" for FLSA purposes.

underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B.  *Applicability of Judicial Estoppel to Castillo's Claims*

Defendants point to Castillo's FLSA lawsuit against third-party New Way as the gateway for the application of judicial estoppel to her minimum wage and retaliation claims in this case. In her lawsuit against New Way, Castillo claims to have worked 48 hours a week from February 2005 until August 31, 2013 and alleges overtime wage violations for what appear to be some of the same hours attributed to her work for Defendants. Defendants point to discrepancies between Castillo's interrogatory answers in both cases as well as her oral testimony given in two separate depositions in Defendants' case. Defendants argue that Castillo is now precluded from all of her underlying claims as a result of her inconsistent positions in the two lawsuits.

"Judicial estoppel is an equitable doctrine that precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting another source). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citations omitted) (citing other sources). "This Circuit has explained that judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery

5

of justice by inconsistent pleadings." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1281, 1285 (11th Cir. 2002) (citing another source). "Judicial estoppel is an equitable doctrine invoked at the court's discretion." *Id.* In this Circuit:

> [C]ourts consider two factors in the application of judicial estoppel to a particular case. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistences must be shown to have been calculated to make a mockery of the judicial system.

*Id.* (internal citations omitted) (citing another source).

While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire*, 532 U.S. at 750–51, several factors have been held to inform a court's decision as to whether to apply the doctrine. *Burnes*, 291 F.3d 1285. These typically include:

> (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.* (citing *New Hampshire*, 532 U.S. at 750–510).[3] Further, "judicial estoppel should not be invoked where the former position was the product of inadvertence or mistake." *Id.* at 1287 (citing *Matter of Cassidy*, 892 F.2d 637, 642) (internal quotations omitted).

---

[3] As *Burnes* instructs, the two factors applied in this Circuit are consistent with the Supreme Court's instructions set forth in *New Hampshire* "and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." *Burnes*, 291 F.3d at 1286–87.

With these principles in mind, we consider whether judicial estoppel bars Castillo's claims.

Assuming that Defendants can establish that Castillo took an inconsistent position in her New Way lawsuit, we cannot, on this record, conclusively determine that she intended to make a mockery of the judicial system in doing so. *See Barger*, 348 F.3d at 1294 ("For purposes of judicial estoppel, intent is a *purposeful* contradiction—not simple error or inadvertence.") (emphasis added). At the very least, there exists a question of material fact as to whether, under the circumstances presented here—and particularly as outlined by Castillo's May 20, 2015 deposition testimony—Castillo had the intent to manipulate the judicial system or simply made a mistake in failing to rectify discrepancies between her hours alleged in the two lawsuits. *See Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973) ("Because the rule looks towards cold manipulation and not an unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake.").

While Defendants' arguments are well taken, there is evidence in the record to support a finding that Castillo's inconsistent positions are the result of inadvertence or mistake. Her deposition testimony is filled with instances that demonstrate what may be Castillo's misunderstanding of the questions presented to her or inability to accurately articulate her position. [*See, e.g.*, D.E. 120-2 at p. 15, 18 (where Castillo often pauses to verify whether her answers are understood)]. For example, Castillo confirms that she began working for Defendants at 4:00 p.m. every day. [*See id.* at p.

6]. Shortly thereafter, she explains that her hours at New Way varied by the day, and that her shift could end at any point in time from 3:00 to 4:00 p.m. [*See id.* at p. 13]. She later states that her interrogatory answers in the New Way case, which claim that she worked at the grocery store until 4:00 p.m., are not entirely incorrect: "Well, it's not incorrect but it's not a hundred percent that I left at 4:00 p.m. We had set a working schedule." [*Id.* at p. 15]. She explained: "Well, if I started, let's say, at 7:00, I would leave at 3:30. If I started at 7:30, I would leave at 4:00." [*Id.* at p. 16]. When asked how she could have possibly been in two places at once—leaving her shift at New Way while simultaneously beginning her shift for Defendants—Castillo explained that the travel time between New Way and Defendants' apartment complex was 10 minutes with traffic and that she would run fifteen minutes late on occasion. [*See id.* at p. 16, 22–23].

Castillo's deposition testimony also demonstrates what may have been a breakdown in communications between Castillo and outside counsel retained for her New Way case [*see, e.g.*, D.E. 120-2 at p. 12, 21, 25]. Portions of Castillo's testimony suggest a lack of purposeful contradiction, in part because she apparently agrees with Defendant's current position [*see id.* at p. 12 ("Because you cannot work so many hours in one place and then to be [at] another place at the same time. It's not possible.")]. Further, the record makes clear that Castillo revealed her employment with New Way throughout her present lawsuit, even if she failed to disclose her lawsuit against the grocer. Finally, the fact that Castillo has not pursued an overtime claim against

8

Defendants further suggests inadvertent mistake rather than purposeful contradiction; all in all, the Court finds that there is at least a question of material fact as to whether Castillo purposefully contradicted herself as to the hours asserted in her New Way case. Castillo may therefore pursue her minimum wage claim against Defendants as the claims are not barred by judicial estoppel.[4]

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Final Summary Judgment [D.E. 120] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 19th day of October, 2015.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[4] Defendants, of course, are not barred from raising this issue at trial for impeachment purposes.